USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/24/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BRENDA WALLACE, Plaintiff Individually
and as Representative of a Class of L. 1549 DC
37 Employees who have been disciplined by
NYPD, and Defendants in violation of section
1983 United States Code,

                     Plaintiffs,

                  -v-

RAY KELLY, Commissioner, N.Y.P.D.; NEW
YORK CITY POLICE DEPT.; THE CITY OF
NEW YORK; NEW YORK CITY CIVIL
SERVICE COMMISSION,

                     Defendants.

------------------------------------------------------------X

No. 12 Civ. 8210 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

      Brenda Wallace, a former employee of the New York City Police Department ("NYPD"), asserts various claims arising out of her termination from the NYPD after a disciplinary hearing. She brings suit individually and on behalf of a putative class of current and former NYPD employees who have also been terminated or faced disciplinary sanctions. In substance, Wallace—who is African-American—alleges that Defendants violated her due process rights during her termination and breached an earlier settlement agreement in which the City of New York (the "City") pledged to address racial discrimination within the NYPD.

      Before the Court is Defendants' motion to dismiss for failure to state a claim. In a Report and Recommendation ("R & R") dated December 3, 2013, Magistrate Judge Netburn recommended dismissing Plaintiff's claims. For the following reasons, the Court adopts Judge Netburn's R & R in its entirety.

## BACKGROUND

Wallace, a civilian member of the NYPD since 2002 with no prior disciplinary record, was terminated based on events that occurred on January 17, 2008.  (Am. Compl. ¶¶ 7a-8; Pl.'s Mem. of Law in Opposition, Ex. A at 9, 30 ("Hr'g Report").)[1]  On that day, NYPD officers executed a search warrant at the three-bedroom apartment where Wallace lived with her son, based on information officers had received from a confidential informant about Wallace's son.  (Am. Compl. ¶ 13; Hr'g Report at 8-9.)  Officers discovered a gun, ammunition, large amounts of cash, cocaine, and drug paraphernalia hidden in the bedroom of Wallace's son and in the third bedroom, where another individual was staying.  (Hr'g Report 10-11.)  Although officers noted that the warrant mentioned Plaintiff only in her capacity as head of the household—not because she was suspected of any wrongdoing—and although officers were aware that she was employed by the NYPD, they nonetheless searched her bedroom.  (Am. Compl. ¶ 13; Hr'g Report at 11-13.)  In her bedroom officers discovered a small clear bag containing marijuana, two partially-smoked marijuana cigarettes, and a box of rolling papers, all found in a bowl on the top of Plaintiff's bedroom closet.  (Hr'g Report at 11.)  Although all three individuals were arrested, only Wallace's son and the third individual were criminally prosecuted.  (Id. at 13.)

The NYPD held a disciplinary hearing, at which Plaintiff—represented by counsel—testified, along with other witnesses.  The hearing officer found Wallace not guilty of the four counts relating to possession of the cocaine, gun, ammunition, and drug paraphernalia.  (Id. at

---

[1]  The Court draws the following facts from Plaintiff's Amended Complaint and from the decision of the NYPD Assistant Deputy Commissioner who presided over her disciplinary hearing.  For simplicity, the Court will refer to that written decision as the "Hearing Report."  The Court may rely on the Hearing Report on a motion to dismiss because the Amended Complaint repeatedly cites this document (see, e.g., Am. Compl. ¶ 18), and the document is integral to the Amended Complaint's allegations, see New York Life Ins. Co. v. United States, 724 F.3d 256, 258 n.1 (2d Cir. 2013).  For purposes of this motion, the Court relies only on those portions of the Hearing Report that Plaintiff has not contested in her opposition memorandum.  Citations to the Hearing Report are based on the electronic pagination from the document attached as Exhibit A to Plaintiff's Memorandum of Law in opposition to the motion to dismiss.

25.)  The officer found Plaintiff guilty of possessing the marijuana, however, concluding that it was unlikely that her son or the other individual hid the marijuana in her bedroom without her knowledge.  (Id. at 21-25.)  The Hearing Report recommended that Wallace be terminated from the Department.  (Id. at 28-29.)  Wallace appealed this finding to the New York City Civil Service Commission ("CSC"), which denied her appeal without a written decision; then-Police Commissioner Raymond Kelly terminated her on February 3, 2010.  (Am. Compl. ¶¶ 7a, 16, 21.)

Wallace filed her complaint in this matter on November 9, 2012, and amended it several months later after Defendants conferred with her counsel regarding their proposed motion to dismiss.  (See Dkt. Nos. 1, 6, 10.)  Although the Amended Complaint is not a model of clarity, it appears to allege that Defendants violated Wallace's substantive and procedural due process rights, as well as her right to be free from unreasonable searches and seizures.  (Am. Compl. ¶ 20a).  The Amended Complaint also asserts that Defendants have violated a settlement agreement entered into between the City and the Latino Officers Association—the "LOA Settlement Agreement"—which arose from an earlier lawsuit based on alleged discrimination by the NYPD against African-American and Latino officers.  (Id. ¶ 36c.)  Additionally, Plaintiff in the Amended Complaint seeks to certify "a class of other civilian . . . NYPD employees who[ ] have been terminated or disciplined by the defendants in violation of their 42 USC Sect 1983 rights."  (Id. ¶ 34.)

Defendants moved to dismiss, and Judge Netburn's R & R recommended granting the motion.  With respect to Wallace's procedural due process claim, Judge Netburn noted that Wallace was afforded a hearing where—aided by counsel—she could call witnesses, present evidence, and cross-examine opposing witnesses; that the hearing officer rendered a twenty five-page decision summarizing the evidence and his findings; that Wallace had the opportunity to

challenge this decision by bringing an Article 78 proceeding in the New York Supreme Court; that instead of bringing an Article 78 proceeding, Wallace opted to appeal the decision to the CSC, where she was again represented by counsel; that the CSC heard and rejected her appeal; and that Wallace arguably could have pursued an Article 78 proceeding to challenge the CSC's decision, but she did not. See R & R (dkt. no. 16) at 11-14. Finding that Wallace thus had "notice and an opportunity to respond," Judge Netburn rejected the procedural due process claim, emphasizing that § 1983 was not the appropriate means by which to challenge the sufficiency of the evidence at the hearing. Id. at 10.

Judge Netburn also rejected Plaintiff's substantive due process claim, finding that her termination was not "conscience-shocking," and similarly rejected Plaintiff's claim that she was the victim of an unreasonable search and seizure. Id. at 19, 21. With respect to Plaintiff's claim that Defendants breached the LOA Settlement Agreement, Judge Netburn concluded that Plaintiff had failed to allege that she had standing to enforce the Agreement. Id. at 20. Because Plaintiff had failed to allege any underlying constitutional injury, Judge Netburn rejected her Monell claim and her attempt to certify a class. Id. at 21-22. The R & R recommended that Plaintiff not be granted leave to amend her complaint, concluding that any amendment would be futile. Id. at 23.

## DISCUSSION

A court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c). The Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). To trigger *de novo* review, the objection must be "specific and clearly aimed at particular findings" in the magistrate

judge's report. <u>Time Square Food Imports LLC v. Philbin</u>, No. 12 Civ. 9101(PAE)(HBP), 2014 WL 521242, at *2 (S.D.N.Y. Feb. 10, 2014). Those portions of the report that are not subject to a proper objection are reviewed only for clear error. <u>Id.</u>

1.   **The LOA Settlement Agreement**

Plaintiff focuses her objections primarily on Judge Netburn's discussion of the LOA Settlement Agreement.

   a.   **Whether Plaintiff Has Standing To Enforce the LOA Settlement Agreement**

Wallace first asserts that she had standing to enforce the LOA Settlement Agreement and that Judge Netburn erred by concluding otherwise. (Pl.'s Objections ¶ 2.) This objection fails for precisely the reason Judge Netburn described: Plaintiff has not alleged that she is "a party to the relevant agreement or that the contracting parties intended [her] to be a third-party beneficiary with enforcement rights." R & R at 20 (quoting <u>BNP Paribas Mortgage Corp. v. Bank of Am., N.A.</u>, 778 F. Supp. 2d 375, 408 (S.D.N.Y. 2011)).

Wallace is correct that in the <u>Latino Officers Association</u> ("<u>LOA</u>") case, this Court certified a class consisting of "all Latino and African-American individuals who have been, are, or will be employed by the NYPD as uniformed officers, including civilians who perform the same employment functions as uniformed officers, who have been or will be subjected to discrimination on the basis of race . . . ." (Pl.'s Objections ¶ 9 (quoting <u>Latino Officers Ass'n v. City of New York</u>, 209 F.R.D. 79, 81 (S.D.N.Y. 2002)). Wallace could be a member of this class insofar as she performed "the same employment functions as uniformed officers."

But the LOA Settlement Agreement, a copy of which Plaintiff has provided,[2] is more narrow. The parties in that agreement stipulated to a class consisting of

---

[2] The Court relies on this document, on a motion to dismiss, for the same reasons it relies on the Hearing Decision: the Amended Complaint cites the LOA Settlement Agreement (Am. Compl. ¶ 37), and the document is integral to Wallace's allegations, <u>see</u> <u>supra</u> note 1.

5

> all Latino and African-American individuals who have been, are, or will be employed by the NYPD as uniformed officers, including civilians who perform the same employment functions as uniformed officers, who have been or will be subjected to discrimination on the basis of race, color or national origin in the form of a hostile work environment, disparate disciplinary treatment, and retaliation for the exercise of their rights *from September 1996 through December 31, 2003*."

(Pl's. Mem. of Law in Opposition Ex. B ¶ 1 (emphasis added).)  The Settlement Agreement also states that "[o]nly counsel for plaintiffs may bring a motion to enforce any provision of this Stipulation, including a motion alleging a violation of the Stipulation or for contempt."  (Id. ¶ 35.)

Plaintiff does not allege any instance of mistreatment that occurred before the search of her home in January 2008—well outside the December 31, 2003 date that limits the LOA class—and her counsel in this matter did not represent plaintiffs in the LOA Settlement Agreement.  (Id. at 11.)  Because Plaintiff is neither a member of the LOA class nor authorized to enforce the terms of the LOA Settlement Agreement, her objection is without merit.

### b. Whether Judge Netburn's Conclusion is Consistent with the Reasoning in the LOA Decisions

Wallace also argues that her claim largely parallels plaintiffs' claims in the LOA case, and that because that case settled on the eve of trial, her claims should have survived a motion to dismiss: "The Wallace Plaintiffs herein should not have their identical employment discrimination and due process violation claims dismissed against the identical NYPD NYC defendants when the Latino Officers plaintiffs proceeded to trial and then a stipulated settlement.[3]"  (Pl's. Objections ¶ 6.)  She seeks leave to file a second amended complaint that would "mirror the words and claims of the LOA complaint [o]n file in the District Court."  (Id. ¶ 7.)

---

[3]   This statement is incorrect: the parties in Latino Officers Association reached a settlement before trial.  See No. 99 Civ. 9568, dkt. nos. 140-41.

The flaw in Plaintiff's reasoning is her assumption that her claims are "identical" to those in the Latino Officers Association case. They are not. A review of the operative complaint in that case shows that plaintiffs alleged intentional discrimination, asserting primarily Title VII claims. See Second Amended Class Action Complaint for Declaratory and Injunctive Relief, Latino Officers Ass'n v. City of New York (No. 99 Civ. 9568(LAK)) ¶¶ 189-202 ("LOA Complaint")); Latino Officers Ass'n, 209 F.R.D. at 82 (noting that "Plaintiffs make three broad allegations": "hostile work environment," "disparate treatment," and "retaliation"). Although the LOA plaintiffs did raise a § 1983 claim, that claim was premised on "disparate treatment" and defendants' maintenance of a "hostile work environment," (LOA Complaint ¶ 214)—the type of intentional discrimination that falls under the Equal Protection Clause, see, e.g., League of United Latin Am. Citizens v. Perry, 548 U.S. 399, 440 (2006) (concluding that a redistricting scheme "bears the mark of intentional discrimination that could give rise to an equal protection violation"). Nowhere does the LOA Complaint mention procedural or substantive due process.

The instant case and the Latino Officers Association case are thus based on dramatically different factual allegations: that case asserted widespread intentional discrimination, whereas the instant case does not contain any allegation of intentional discrimination. Without such an allegation—as Judge Netburn noted, see R & R 16—Wallace cannot raise a § 1983 claim for violation of her equal protection rights, see Washington v. Davis, 426 U.S. 229, 239, 247-48 (1976). Judge Netburn's rejection of Wallace's substantive and procedural due process claims are therefore perfectly consistent with the decisions in the LOA case: the Court in that case never considered the due process arguments Defendants raise here, because plaintiffs in that case did not bring a due process claim.

**c.      Whether Wallace Should Be Granted Leave To Amend Her Complaint**

The next question is whether Plaintiff should be granted leave to file a Second Amended Complaint. This question hinges on whether she could plausibly allege a Title VII or § 1983 equal protection claim.

At the outset, the Court notes Defendants' representation that prior to the instant motion to dismiss they conferred with Plaintiff regarding the defects in her due process claims and provided relevant case law, as the Court's Individual Rules & Practices in Civil Cases require. (Dkt. No. 6 Ex. B.) Two months later, Plaintiff filed an Amended Complaint. (See id.; dkt. no. 10.) Plaintiff therefore has had ample time to assess and address the defects in her complaint.

Even putting aside that Plaintiff was given an earlier opportunity to amend her complaint, the Court agrees with Judge Netburn that amendment would be futile. Nothing in Wallace's Amended Complaint suggests that she could plausibly allege intentional discrimination under either Title VII or the Equal Protection Clause.

By citing the LOA Complaint, however, one could charitably construe Plaintiff's objections as a request to add a Title VII disparate impact claim. Such a claim requires a plaintiff to show "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 575 (2d Cir. 2003).

Here, however, it is difficult to discern what the outwardly neutral "practice" would be. The Amended Complaint describes individuals disciplined or terminated from the NYPD after a hearing for a number of different reasons, ranging from excessive absences to identity theft. (Am. Compl. ¶¶ 48, 52.) Perhaps the only "practice" or "policy" Plaintiff articulates is that the

NYPD disciplines or terminates individuals for their "association with criminals." (Id. ¶ 59.) Such a "policy" is too vague and ambiguous to sustain a disparate impact claim. See Smith v. City of Jackson, Miss., 544 U.S. 228, 241 (2005) ("[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities."). Permitting Plaintiff to amend to add a disparate impact claim would thus be futile. See Kulkarni v. City Univ. of N.Y., No. 01 Civ. 10628(DLC), 2003 WL 23319, at *5 (S.D.N.Y. Jan. 3, 2003) (denying leave to replead where plaintiff could not specify the particular employment practice that was the focus of his disparate impact claim).

**2.      Plaintiff's Other Objections**

Wallace also raises several other objections, many of which are simply conclusory assertions.

She first challenges Judge Netburn's recommendation that her substantive due process claim be dismissed, arguing that she was innocent of the marijuana possession charge and that the hearing officer should have ordered that the partially-smoked marijuana cigarettes be tested for DNA. (Pl's. Objections at 18, 21, 24a.)

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." Cunney v. Bd. of Trustees of Village of Grand View, 660 F.3d 612, 626 (2d Cir. 2011). Here, the Court sees nothing arbitrary or conscience-shocking in the hearing officer's conclusion that Wallace knowingly possessed marijuana, in light of evidence and testimony that the drug was found in her bedroom closet. Nor is there anything conscience-

shocking in Defendants' decision to terminate Wallace—an employee of the NYPD—after she was found to be in knowing possession of the marijuana. See generally Bishop v. Wood, 426 U.S. 341, 350 (1976) ("In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.").

Plaintiff also challenges Judge Netburn's recommendation that the claims against former Police Commissioner Kelly be dismissed. (Pl's. Objections at ¶¶ 26-27.) The Court finds no error in this conclusion, because Plaintiff has failed plausibly to allege that Kelly—or any other Defendant—violated her constitutional or statutory rights.

Finally, Plaintiff asks the Court to order Defendants to attend a settlement conference. During the parties' February 4, 2014 conference call, the Court requested that Defendants submit a letter stating whether they consented to participating in a mediation session or settlement conference. Defendants subsequently replied that they did not believe settlement or mediation would be productive at this stage in the litigation. (Dkt. No. 22.) In these circumstances, ordering a settlement conference would be inappropriate.[4]

## CONCLUSION

The Court has reviewed the other portions of the R & R and finds no clear error. Accordingly, it adopts Judge Netburn's R & R in full and grants Defendants' motion to dismiss

---

[4] Plaintiff also suggests that she plausibly alleged claims under "NYS Human Rights Law" and "New York Common law." (Pl's. Objections ¶ 13.) To the extent she has raised any state law claims, the Court declines to exercise jurisdiction over them. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

the Amended Complaint.

The Clerk of Court is requested to terminate the motion pending at docket number 5 and to close the case.

SO ORDERED.

Dated:      February 24, 2014
            New York, New York

_____
Ronnie Abrams
United States District Judge